IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DEANDRE R. PETTIFORD, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Civil Action No. 12-423-GMS |
| ) | |
| G.R. JOHNSON, Warden, and ) | |
| ATTORNEY GENERAL OF ) | |
| THE STATE OF DELAWARE, ) | |
| ) | |
| Respondents. ) | |

Deandre R. Pettiford. *Pro se* petitioner.

Karen V. Sullivan, Delaware Department of Justice, Wilmington, Delaware. Counsel for Respondents.

**MEMORANDUM OPINION**

July 17 , 2015
Wilmington, Delaware


Sleet, District Judge

Pending before the court is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed by petitioner Deandre R. Pettiford ("Pettiford"). (D.I. 3; D.I. 7) For the reasons discussed, the court will deny the petition.

## I. FACTUAL AND PROCEDURAL BACKGROUND[1]

On April 1, 2008, an IRS refund tax check, made payable to William and Janeen Pollard in the amount of $13,638, was forged and deposited through an ATM into a joint bank account owned by Michael Quailes and a woman named Juanita Sturgis. The next day, at approximately 9 a.m., Quailes withdrew $13,000 from the joint account. He made a second withdrawal around noon in the amount of $635. Quailes was a friend of Pettiford's mother, Pam Luke. The check had been stolen from a home in Sussex County owned by the Pollards and rented by a woman named Seven Abdullah and her sister. Abdullah was dating Pettiford at the time the check was stolen and deposited. The State's indictment charged Abdullah, Quailes, and Pettiford with second degree forgery, misdemeanor theft, theft by false pretenses, and second degree conspiracy. Abdullah and Quailes resolved their charges by entering guilty pleas, and they agreed to testify against Pettiford at his trial.

Abdullah testified that she saw the Pollard's check arrive at the apartment and then later noticed it missing. Afterwards, she saw the check in Quailes' possession while Pettiford drove them around in Quailes' car looking for a place to cash it. Abdullah testified that Quailes endorsed the check, and Abdullah and Quailes were captured on a surveillance camera as they deposited the check into Quailes' account through an ATM. The next day, Quailes brought

---

[1]The factual background is summarized from the Delaware Supreme Court's decision in Pettiford's direct appeal, *Pettiford v. State*, 991 A.2d 18 (Table), 2010 WL 891910, at *1-2 (Del. Mar. 12, 2010).

$13,000 to Luke's house and gave it to Pettiford. Abdullah was present and, after the money was divided, she and Pettiford proceeded to spend it.

Quailes testified that Pettiford's mother, Pam Luke, was a friend of his and called him and asked him to give Pettiford a ride to the bank to cash a check. Pettiford agreed to pay Quailes for the ride. When Pettiford could not cash the check, Quailes offered to deposit it into his account. Later, Quailes withdrew $13,000 and took it to Pettiford who was with Abdullah at Luke's house. Pettiford told him to keep the remaining $638, which he later withdrew and kept.

In May 2009, a Superior Court jury convicted Pettitford of second degree forgery, felony theft, second degree conspiracy, and misdemeanor theft. (D.I. 15 at 1); *Pettiford*, 2010 WL 891910, at *1. The Superior Court sentenced him as a habitual offender to eleven years at Level V incarceration, suspended after ten years for one year of Level IV work release. *See State v. Pettiford*, 2011 WL 531974, at *2 (Del. Super. Ct. Feb. 15, 2011). The Delaware Supreme Court affirmed Pettiford's convictions and sentence on direct appeal. *See Pettiford*, 2010 WL 891910 at *4.

Thereafter, Pettiford filed a motion for post-conviction review pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion"), asserting three claims: (1) defense counsel provided ineffective assistance because he represented Pettiford by operating under a conflict of interest and also because his performance was deficient; (2) the State engaged in prosecutorial misconduct by conspiring to hide defense counsel's conflict of interest; and (3) the trial court violated Pettiford's due process rights by failing to hold a hearing inquiring into counsel's conflict of interest. (D.I. 17, State's Motion to Affirm in *Pettiford v. State*, No.290,2010, at B15-B49) The Superior Court summarily denied all three grounds. (D.I. 17, State's Motion to

Affirm in *Pettiford v. State*, No.290,2010, at B50-B51) Pettiford appealed that decision, and the Delaware Supreme Court remanded the case back to the Superior Court to expand the record and consider the merits of Pettiford's ineffective assistance of counsel claims. After considering additional claims added by Pettiford and additional briefing from defense counsel and the State, the Superior Court denied Pettiford's Rule 61 motion. *See generally Pettiford*, 2011 WL 531974, at *2. The Delaware Supreme Court affirmed that decision on return from remand. *See Pettiford v. State*, 21 A.3d 597 (Table), 2011 WL 2361383, at *3 (Del. June 13, 2011).

## II. GOVERNING LEGAL PRINCIPLES

### A. The Antiterrorism and Effective Death Penalty Act of 1996

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "to reduce delays in the execution of state and federal criminal sentences . . . and to further the principles of comity, finality, and federalism." *Woodford v. Garceau*, 538 U.S. 202, 206 (2003). Pursuant to AEDPA, a federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). AEDPA imposes procedural requirements and standards for analyzing the merits of a habeas petition in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

### B. Exhaustion and Procedural Default

Absent exceptional circumstances, a federal court cannot grant habeas relief unless the petitioner has exhausted all means of available relief under state law. 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-44 (1999); *Picard v. Connor*, 404 U.S. 270, 275 (1971). AEDPA states, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that –
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)(i) there is an absence of available State corrective process; or
> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

The exhaustion requirement is based on principles of comity, requiring a petitioner to give "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 844-45; *Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000). A petitioner satisfies the exhaustion requirement by demonstrating that the habeas claims were "fairly presented" to the state's highest court, either on direct appeal or in a post-conviction proceeding, in a procedural manner permitting the court to consider the claims on their merits. *Bell*, 543 U.S. at 451 n.3; *Castille v. Peoples*, 489 U.S. 346, 351 (1989).

A petitioner's failure to exhaust state remedies will be excused if state procedural rules preclude him from seeking further relief in state courts. *Lines v. Larkins*, 208 F.3d 153, 160 (3d Cir. 2000); *see Teague v. Lane*, 489 U.S. 288, 297-98 (1989). Although treated as technically exhausted, such claims are nonetheless procedurally defaulted. *Lines*, 208 F.3d at 160; *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). Similarly, if a petitioner presents a habeas claim to the state's highest court, but that court "clearly and expressly" refuses to review the merits of the claim due to an independent and adequate state procedural rule, the claim is exhausted but procedurally defaulted. *See Coleman*, 501 U.S. at 750; *Harris v. Reed*, 489 U.S. 255, 260-64 (1989).

Federal courts may not consider the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims. *McCandless v. Vaughn*, 172 F.3d 255, 260 (3d Cir. 1999); *Coleman*, 501 U.S. at 750-51. To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To demonstrate actual prejudice, a petitioner must show "that [the errors at trial] worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494.

Alternatively, a federal court may excuse a procedural default if the petitioner demonstrates that failure to review the claim will result in a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Wenger v. Frank*, 266 F.3d 218, 224 (3d Cir. 2001). A petitioner demonstrates a miscarriage of justice by showing a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 496. Actual innocence means factual innocence, not legal insufficiency. *Bousley v. United States*, 523 U.S. 614, 623 (1998). In order to establish actual innocence, the petitioner must present new reliable evidence – not presented at trial – that demonstrates "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *House v. Bell*, 547 U.S. 518, 537-38 (2005); *Sweger v. Chesney*, 294 F.3d 506, 522-24 (3d Cir. 2002).

## C. Standard of Review

When a state's highest court has adjudicated a federal habeas claim on the merits,[1] the federal court must review the claim under the deferential standard contained in 28 U.S.C. § 2254(d). Pursuant to 28 U.S.C. § 2254(d), federal habeas relief may only be granted if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or the state court's decision was an unreasonable determination of the facts based on the evidence adduced in the trial. 28 U.S.C. § 2254(d)(1) & (2); *see also Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001). This deferential standard of § 2254(d) applies even "when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied." *Harrington v. Richter*, 562 U.S. 86, 98-100 (2011). As recently explained by the Supreme Court, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id.*

Finally, when reviewing a claim under § 2254(d), a federal court must presume that the state court's determinations of factual issues are correct. 28 U.S.C. § 2254(e)(1); *Appel*, 250 F.3d at 210. This presumption of correctness applies to both explicit and implicit findings of fact, and is only rebutted by clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1); *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000); *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003)(stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions).

---

[1] A claim has been "adjudicated on the merits" for the purposes of 28 U.S.C. § 2254(d) if the state court decision finally resolves the claim on the basis of its substance, rather than on a procedural or some other ground. *Thomas v. Horn*, 570 F.3d 105, 115 (3d Cir. 2009).

## III. DISCUSSION

Pettiford's timely filed petition asserts three grounds for relief grounds for relief: (1) defense counsel provided ineffective assistance because he represented Pettiford while operating under an actual conflict of interest; (2) the State engaged in prosecutorial misconduct by knowingly and intentionally consorting with the trial judge and defense counsel to hide defense counsel's actual conflict of interest; and (3) the Superior Court abused its discretion by summarily dismissing Pettiford's first Rule 61 motion and the trial court abused its discretion by determining there was sufficient evidence to support Pettiford's conviction and denying his motion for judgment of acquittal. (D.I. 7)

### A. Claim One: Ineffective Assistance of Counsel

In claim one, Pettiford contends that the public defender represent him while operating under an actual conflict of interest, because the same public defender was simultaneously representing Pettiford's co-defendant Quailes for a seven day period. The Delaware Supreme Court held that defense counsel did not provide ineffective assistance because there was no actual conflict of interest. Given the Delaware Supreme Court's adjudication of claim one, habeas relief will only be available if that court's decision was either contrary to, or involved an unreasonable application of, clearly established federal law.

The clearly established law governing the instant ineffective assistance of counsel claim is the two-pronged standard enunciated by *Strickland v. Washington*, 466 U.S. 668 (1984) and its progeny. *See Wiggins v. Smith*, 539 U.S. 510 (2003). Under the first *Strickland* prong, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *Strickland*, 466 U.S. at 688. Under the second *Strickland*

prong, a petitioner must demonstrate "there is a reasonable probability that, but for counsel's error the result would have been different." *Id.* at 687-96. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id.* at 688. In order to sustain an ineffective assistance of counsel claim, a petitioner must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. *See Wells v. Petsock*, 941 F.2d 253, 259-60 (3d Cir. 1991); *Dooley v. Petsock*, 816 F.2d 885, 891-92 (3d Cir. 1987). Although not insurmountable, the *Strickland* standard is highly demanding and leads to a "strong presumption that the representation was professionally reasonable." *Strickland*, 466 U.S. at 689.

A Sixth Amendment conflict of interest claim is usually treated as a special type of ineffective assistance of counsel claim, because the attorney's assistance will be presumed to have been prejudicially ineffective if the attorney actively represented conflicted interests that adversely affected his performance. *See Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980). To prevail on an ineffective assistance of counsel claim based on a conflict of interest arising in the context of an attorney's representation of multiple clients, a petitioner "must establish that an actual conflict of interest adversely affected his lawyer's performance." *Id.* An actual conflict of interest arises when "trial counsel's interests and the defendants' interests diverge[] with respect to a material factual or legal issue or to a course of action." *Government of Virgin Islands v. Zepp*, 748 F.2d 125, 135 (3d Cir. 1984). As explained by the Third Circuit, an "actual conflict" arising from defense counsel's active representation of conflicting interests is established by showing (1) some plausible alternative defense strategy might have been pursued, and (2) the alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests. *See United States v. Morelli*, 169 F.3d 798, 810 (3d Cir. 1999). Looking at an attorney's duties to both clients, an "actual conflict exists only if the proposed alternative

8

strategy (a) could benefit the instant defendant and (b) would violate the attorney's duties to the other client." *Id.* at 811. As noted by the Supreme Court, courts must keep in mind the principle that "defense counsel is in the best position to determine if a conflict exists." *Mickens v. Taylor*, 535 U.S. 162, 167-68 (2002).

In this case, the Delaware Supreme Court applied the standards articulated in *Strickland* and *Cuyler* when it denied Pettiford's instant ineffective assistance of counsel allegations on post-conviction appeal. Thus, the Delaware Supreme Court's decision was not contrary to clearly established federal law. *See Williams*, 529 U.S. at 406 ("[A] run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case [does] not fit comfortably within § 2254(d)(1)'s 'contrary to' clause").

The court's inquiry under § 2254(d)(1) is not over, because it must also determine if the Delaware Supreme Court's denial of claim one as meritless involved a reasonable application of *Strickland* and *Cuyler* When performing this inquiry, the court must review the Delaware Supreme Court's decision with respect to petitioner's ineffective assistance of counsel claims through a "doubly deferential" lens. *See Harrington v. Richter*, 562 U.S. 86, 105-06 (2011). In other words, "the question is not whether counsel's actions were reasonable, [but rather], whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

Pettiford asserts that his Sixth Amendment right to effective assistance of counsel his defense counsel was denied because the Office of the Public Defender and his appointed public defender represented him simultaneously with, and subsequent to, their representation of his co-defendant Quailes in the same proceeding, and that this successive representation created an actual conflict of interest due to divided loyalties. Pettiford raised this same argument in his

9

Rule 61 motion. After reviewing the record on remand, the Superior Court determined that no conflict of interest existed. The Delaware Supreme Court affirmed that decision, explaining that

> [t]he record reflects that the Public Defender's Office was counsel of record for Quailes from January 12, 2009 until February 26, 2009. [Defense counsel's representation of Pettiford began on February 19, 2009.] [On February 26, 2009], counsel filed a notice of conflict in the Superior Court, and another attorney, who was not employed by the Public Defender's office, was appointed to represent Quailes. Counsel stated that, during the six weeks that he was counsel of record for Quailes, he had never met with Quailes or obtained any information about the case. Pettiford offers nothing other than speculation to support his claim that counsel's brief representation of Quailes created divided loyalties that prohibited counsel from effectively cross-examining Quailes at trial. We find nothing in the record to substantiate this conclusory allegation.

*Pettiford v. State*, 2011 WL 2361383, at *2 & n.9.

To begin, Pettiford has not provided any clear and convincing evidence in this proceeding to rebut the Delaware Supreme Court's determination that defense counsel's cross-examination of Quailes was not negatively affected by counsel's brief seven day simultaneous representation of Quailes, primarily because defense counsel never met with or spoke to Quailes during that time period. In addition, Pettiford has not demonstrated that defense counsel failed to pursue a plausible alternative defense strategy as a result of the Public Defender's Office's seven day concurrent representation of both Quailes and Pettiford. Given these circumstances, the court cannot conclude that the brief representation of both co-defendants advanced any interests that were detrimental to Pettiford. In sum, because the court finds that the Delaware Supreme Court reasonably applied *Cuyler* in holding that defense counsel was not operating under an actual conflict of interest, it will not presume the existence of prejudice under *Strickland*.[2]

---

[2]At most, defense counsel's brief simultaneous representation of Pettiford and Quailes created a potential conflict of interest. Upon discovering the potential conflict of interest, the Public Defender's Office immediately rectified the situation by assigning outside conflict counsel to represent Quailes. Notably, however, prejudice is not presumed for potential conflicts of interest. *See Chappell v. Folino*, 2009 WL 1422575, at *10 (E.D. Pa. May 20, 2009).

The court also concludes that Pettiford has failed to demonstrate prejudice under the *Strickland* standard that would be necessary to prevail on the remaining ineffective assistance of counsel allegations contained in claim one. Notably, Pettiford's unsupported and conclusory allegation that defense counsel obtained "confidential information about Quailes and information that incriminated Pettiford" during the seven day simultaneous representation which, in turn, somehow placed defense counsel in an "awkward situation during cross-examination of [] Quailes" does not establish a reasonable probability that the result of Pettiford's trial would have been different but for that brief simultaneous representation. (D.I. 3 at 17; D.I. 7 at 2) The portion of the trial transcript Pettiford has included to support this allegation only reveals the sidebar conference defense counsel had with the trial judge and the State regarding Quailes' brief testimonial reference to having been represented by the Public Defender's Office at some point. During the sidebar, defense counsel explained that the Public Defender's Office had been conflicted out of representing Quailes, and that he personally had never met with Quailes during the brief seven day period of simultaneous representation. (D.I.7 at 8-9) Nothing in this portion of the transcript (or in any portion of the transcript) supports Pettiford's contention that defense counsel's cross-examination was in any way awkward or deficient as a result of that seven-day simultaneous representation.

Pettiford's allegation that the conflict of interest/divided loyalties caused defense counsel to ignore his request to call certain witnesses also falls short of *Strickland*'s prejudice requirement. As defense counsel explains in his Rule 61 affidavit, the case against Pettiford was largely circumstantial and based almost entirely on Quaile's testimony. (D.I. 3 at 35-36) Defense counsel's strategy "was to show the complete lack of physical or other evidence tying [Pettiford] to the crime and to show [Quailes'] motivation for fabricating or otherwise

11

implicating [Pettiford]." (D.I. 3 at 35) Assuming that the witnesses mentioned by Pettiford are the same two witnesses he identified in his post-conviction appeal (a bank employee and Pettiford's mother), the court concurs with the Delaware Supreme Court's conclusion that defense counsel reasonably determined that calling these witnesses could have been harmful to the defense strategy. For instance, in his Rule 61 affidavit response to Pettiford's Rule 61 amendment on remand to the Superior Court, defense counsel explains that Pettiford admitted that he had been with Quailes and Abdullah on the day in question, but he denied being involved in the cashing of the stolen check. Since Pettiford was not shown in the bank surveillance videotape, and the only evidence linking Pettiford to the crime consisted of testimony from his co-defendants, it was reasonable for defense counsel to decide that calling the bank teller may have harmed Pettiford's case because the teller may have confirmed his presence at the bank. (D.I. 17, State's Answering Supp. Mem. in *Pettiford v. State*, No.290,2010, at BB-62)

As for calling Pettiford's mother as a witness, Pettiford has provided an affidavit from his mother asserting that Pettiford only joined Quailes and Abudullah in the car on the day in question to sell drugs to Quailes, not to fraudulently cash the check.[3] However, since this affidavit (and any corresponding testimony) actually placed Pettiford with Quailes and Abdullah on the same day that the forged check was deposited, the court once again concludes that it was reasonable for defense counsel to decide that such testimony was more likely to harm the defense theory than help it.

---

[3]Pettiford's state court filings included an undated and unsworn affidavit from his mother stating that Quailes and Abdullah came to her house early in the day asking her to cash the check. Pettiford's mother refused, and they left. His mother then states that, later that same day, she saw Pettiford get into a car with Abdullah and Quailes and drive away with them. Based on earlier information from Pettiford, Pettiford's mother believed the purpose of the car drive was for Quailes to buy drugs from Pettiford. (D.I. 17, State's Answering Supp. Mem. in *Pettiford v. State*, No.290,2010, at BB-62)

12

Thus, after viewing the Delaware Supreme Court's decision through the doubly deferential lens applicable on habeas review, the court concludes that the Delaware Supreme Court reasonably applied *Strickland* in holding that Pettiford failed to demonstrate a reasonable probability that the outcome of his trial would have been different if these two witnesses had testified. Accordingly, the court will deny claim two in its entirety for failing to satisfy § 2254(d).

## B. Claim Two: Prosecutorial Misconduct

Next, Pettiford contends that the State engaged in prosecutorial misconduct by helping the trial court and defense counsel conceal the conflict of interest and by asking leading questions of Quailes. The Delaware Supreme Court denied this argument as procedurally defaulted under Rule 61(i)(3) because Pettiford did not raise the issue during his criminal trial or on direct appeal. By applying the procedural bar of Rule 61(i)(3), the Delaware Supreme Court articulated a "plain statement" under *Harris v. Reed*, 489 U.S. 255, 263-4 (1984) that its decision rested on state law grounds. This court has consistently held that Rule 61 is an independent and adequate state procedural rule precluding federal habeas review. *See McCleaf v. Carroll*, 416 F. Supp. 2d 283, 296 (D. Del. 2006); *Mayfield v. Carroll*, 2005 WL 2654283 (D. Del. Oct. 11, 2005). Hence, the court cannot review the merits of claim two absent a showing of cause for the default, and prejudice resulting therefrom, or upon a showing that a miscarriage of justice will occur if the claim is not reviewed.

Pettiford has not alleged cause for his failure to present this claim on direct appeal.[4] In the absence of cause, the court does not need to address the issue of prejudice. However,

---

[4]Pettiford's defense counsel filed a notice of appeal, an opening appellate brief, and a motion to withdraw pursuant to Rule 26(c). *See Pettiford*, 2010 WL 891910, at *1. The Delaware Supreme Court's decision on post-conviction appeal states in a footnote that the issues in claim

13

Pettiford cannot establish prejudice to excuse his default because, as discussed *supra*, there simply was no actual conflict of interest. As such the trial court and the State could not have joined together in concealing in a non-existent conflict.

The miscarriage of justice exception to the procedural default doctrine also fails to excuse Pettiford's default, because Pettiford has not provided new reliable evidence of his actual innocence that was not presented at trial. Accordingly, the court will deny claim two as procedurally barred.[5]

### C. Claim Three: State Courts Abused Discretion

#### 1. The Superior Court erred in summarily dismissing Pettiford's Rule 61 motion

In claim three, Pettiford contends that the Superior Court erred as a matter of law in summarily dismissing his Rule 61 motion without holding an evidentiary hearing. This claim alleges a state law claim that is not cognizable on federal habeas review because Pettiford's ultimate criticism is with the Superior Court's analysis in a state collateral proceeding. *See Hassine v. Zimmerman*, 160 F.3d 941, 954 (3d Cir. 1998)(holding that the "federal role in reviewing an application for habeas corpus is limited to evaluating what occurred in the state or federal proceedings that actually led to the petitioner's conviction; what occurred in the petitioner's **collateral** proceeding does not enter into the habeas proceeding.")(emphasis in

---

two were included in the original opening brief on appeal, *See Pettiford*, 2011 WL 2361383, at *2 n.4, but not in the fifteen page letter Petitioner provided in response to defense counsel's motion to withdraw. *See Pettiford*, 2010 WL 891910, at *1. However, the court's review of Pettiford's opening brief on appeal has not found any mention of the issues raised in claim two. Since the Delaware Supreme Court's post-conviction appellate decision denies claim two as procedurally defaulted, the court is perplexed by footnote four's assertion that these issues were raised in the original opening brief on appeal.

[5]Even if the court did not treat claim two as procedurally defaulted, Pettiford would not be entitled to relief. Simply stated, the absence of an actual conflict renders his argument regarding efforts to conceal an actual conflict of interest meritless.

14

original); *see also Lambert v. Blackwell*, 387 F.3d 210, 247 (3d Cir. 2004)("alleged errors in [state] collateral proceedings . . . are not a proper basis for habeas relief"). As such, the court will deny claim three for failing to assert a proper basis for federal habeas relief.

### 2. Trial court erred in denying Pettiford's motion for judgment of acquittal

Claim three also alleges that the trial court erred in denying Pettiford's motion for judgment of acquittal because there was insufficient evidence to support his convictions. Specifically, Pettiford asserts the only evidence linking him to the crimes was testimony provided by Quailes and Abdullah, and the fact that some of that testimony was contradictory means there was insufficient evidence to support his convictions. On direct appeal, the Delaware Supreme Court denied this argument as meritless. Therefore, habeas relief will only be available if that decision was either contrary to, or involved an unreasonable application of, clearly established federal law.

The United States Supreme Court precedent governing Pettiford's insufficient evidence claim is *Jackson v. Virginia*, 443 U.S. 307 (1979). Pursuant to *Jackson*, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319. Notably, it is not necessary that the evidence exclude every reasonable hypothesis except that of guilt, and a "federal habeas court faced with a record of historical facts that supports conflicting inferences must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Id.* at 326. Finally, when reviewing a habeas application "alleging an unconstitutional conviction due to insufficient evidence, federal courts do not review the reasoning underlying the state court's decision. Instead, we focus on whether the state court's

ultimate decision – affirmation of the conviction – was supported by sufficient record evidence." *Rodriguez v. Rozum*, 535 F. App'x 125, 130-31 (3d Cir. 2013).

Turning to the inquiry required by § 2254(d)(1), the court notes that a state court's decision is "contrary to" clearly established law under § 2254(d)(1) if "the state court applies a rule that contradicts the governing law set forth in Supreme Court cases . . . or if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [that precedent]." *Williams*, 529 U.S. at 405. Although the Delaware Supreme Court in Pettiford's case did not cite directly to *Jackson* when it held that that "the evidence was more than sufficient to sustain Pettiford's convictions," *Pettiford*, 2010 WL 891910, at *3, it appropriately relied on Delaware caselaw articulating the proper federal standard applicable to sufficiency of the evidence claims. *See Fahy v. Horn*, 516 F.3d 169, 196 (3d Cir. 2008)(Supreme Court of Pennsylvania's decision was not "contrary to" clearly established federal law because it appropriately relied on its own state court cases which articulated the proper standard derived from Supreme Court precedent). Thus, the Delaware Supreme Court's decision was not contrary to clearly established law.

In addition, the Delaware Supreme Court's decision did not involve an unreasonable application of *Jackson*. First, pursuant to both Delaware and Third Circuit precedent, testimony provided by a co-defendant and/or a cooperating witness "may alone be sufficient to uphold a conviction, especially where the defense had [] ample opportunity to cross-examine the Government's witnesses. *See United States v. Perez*, 280 F.3d 318, 344 (3d Cir. 2002); *see also Greene v. State*, 966 A.2d 824, 828 (Del. 2009). Second, the inconsistencies in Quailes' and Abdullah's testimony concerned Pettiford's whereabouts during the depositing of the check at

the ATM,[6] where Pettiford was seated in the vehicle while they were driving around looking for a place to cash the check, when Quailes and Abdullah met for the first time, and whether Pettiford or Quailes endorsed the Pollard's check. (D.I. 17, State's Resp. to Appellant's Rule 26(c) Brief at ¶7). However, Quailes and Abudullah's testimony was consistent with respect to their description of: how all three drove around in a car attempting to cash the check; that once they realized the check could not be cashed, Quailes offered to deposit it into the bank account he owned jointly with Sturgis; how Quailes and Abdullah deposited the check via an ATM machine; the fact that Quailes withdrew money the next day and brought it Pettiford's mother's house; that Quailes handed Pettiford $13,000; that Pettiford kept the $13,0000; and that Pettiford informed Quailes he should keep the leftover money. (D.I. 17, App. to Appellant's Br. Under Rule 26(c), Transcript of Proceedings). This testimony was corroborated by bank records showing a deposit in the amount of $13,638 made on April 1, 2008, and two withdrawals, one in the amount of $13,000 and the second for $635, made on April 2, 2008. Thus, deferring, as it must, to the jury's credibility determination, and after considering the aforementioned evidence in a light most favorable to the State, the court concludes that a rational trier of fact could have found Pettiford guilty of the four offenses for which he was charged.

In light of the foregoing, the court concludes that the Delaware Supreme Court's denial of the instant claim involved a reasonable application of *Jackson*. Accordingly, the court will deny this portion of claim three for failing to satisfy the requirements of § 2254(d).

---

[6]Quailes testified that Pettiford was standing just outside the view of the surveillance camera when he and Abdullah deposited the check at the ATM. *See Pettiford*, 2011 WL 531974, at *1. Abdullah testified that Pettiford remained in the car when she and Quailes deposited the check. *Id.*

## IV. CERTIFICATE OF APPEALABILITY

When a district court issues a final order denying a § 2254 petition, the court must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011). A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The court has concluded that Pettiford's petition fails to warrant federal habeas relief. The court is persuaded that reasonable jurists would not find this conclusion to be debatable. Therefore, the court will not issue a certificate of appealability.

## V. CONCLUSION

For the reasons stated, Pettiford's petition for habeas relief pursuant to 28 U.S.C. § 2254 is denied without an evidentiary hearing or the issuance of a certificate of appealability. An appropriate order shall issue.